close up of Good morning, if it pleases the court. My name is Earl Burke, and I am here on behalf of Ms. Kelly Johnson, who is in attendance this morning. Council, good morning. This case is a contract dispute case, and it involves two different services in this case. The first service being nursing service that are being provided by Ms. Johnson individually. And the second service is the home care service. Mr. Burke, can I ask you a question? Yes, sir. This is a messy factual case, I think. So I want to make sure I understand where you're starting from so I can understand where you're going. What contract, and I know your argument is that there were two different services, that the hosting contract did not take care of the skilled nursing services, and that RestCare still had an obligation to pay Ms. Johnson for the skilled nursing services, right? Correct. Okay, I think I have that. What contract, if you are right, what contract governed RestCare's obligation to pay the skilled nursing services separately? Which document or which agreement governed that payment obligation? We submit that the document that governed that was the professional service agreement that RestCare claims they did not sign. The 2007 agreement? Correct. And any subsequent agreement that she wouldn't have? No, no, that's the thing. That's where I'm confused because I understand your argument that the 2007 agreement dealt with the skilled nursing services, and that even if RestCare may not have had a copy of it, they acted pursuant to it, and we can accept, at least at summary judgment, that that was the contract. But that contract was not infinite in terms of time, right? It was not. So what contract, when that contract ended, because the host contract took place in like 2012, right? Correct. So between 2007 and 2012, what contract governed RestCare's obligations to pay Ms. Johnson for skilled nursing services? There was no written contract that governed the nursing services. It's our contention that there was an expressed agreement, and expressed agreement, as this Court is aware, can be either verbally or by the party's action. And the party's action in this case was that Ms. Johnson . . . Your argument, it was not terminable. Well, it was renewable. No, no, no. Your argument is it was not terminable. The contract . . . Since they had no expressed, there was no written documents, your argument is that it was interminable. Well, that's part of our argument, Judge. Could they ever stop paying the hourly rate? Absolutely. They could terminate it at any time. It was an employment at will, so to speak. Sure it was. At any point, either party could decide they did not want to provide the service, they could decide they did not want to accept the service. But in this case, they continued, they being RestCare and Ms. Johnson, continued . . . I understand, but it was not in the written agreement, and the written agreement had a merger clause. Well, it's our position that that written agreement doesn't apply to the skilled nursing services that were being provided. The merger clause that's contained in that document is specific to the host home care that was being provided, which is totally separate. Now, the defendants in this case want to conflate the issue and, of course, incorporate and say that Ms. Johnson was obligated contractually to also provide nursing services pursuant to the home host agreement. But that flies in the face of Medicare law, which required them. And they required her to have two different entities billing them, one for the nursing service, which she did in her individual capacity, and the other for the host home. Let me go back to the question about which agreement governed. What were the terms of the oral express agreement that you say existed in 2012 when the host agreement was entered into? It was the same term that existed in 2007, 2008, 2009, 2010, and that was she would provide nursing services . . . At $16 an hour? At $16 an hour as required. And nobody could change that amount? It was just to continue for whatever? The parties could certainly renegotiate that, but again, this was . . . Well, no, you're saying it was interminable. I'm not saying that . . . Well, that's the effect of what you're saying. They paid her up to a point, and then they say, as I understand it, they paid her to a point and said, this has been a mistake and we're not paying you anymore. Right. She wants to recover for anymore. Correct. Which means it was not terminable. They, in effect, terminated the at-will arrangement when they said, we're not paying you anymore from today. Well, they actually didn't do that. And she wants to recover, as I understand it, after today. What they did was they continued to utilize her nursing services. I understand that. But they didn't want to pay her. She wants to be paid on an hourly rate from today, when they said this is the end, unlimited, up to now, I suppose, or whenever. That's precisely correct, Judge. Okay. Here's my other concern, then, if that's the argument. As I understand this record, and I haven't gone into it completely, so I could be wrong. Even under your version of what happened, Rest Care kept paying Ms. Johnson the additional $16 an hour for a period of time, a short period of time, after the host agreement was signed, right? Correct. Then they said, oh, we've been doing that by mistake, and we are stopping, right? Correct. If you are right, why isn't that statement, we are stopping them ending the contract for $16 an hour? Well, we agree that they can stop the contract, but they can't breach the contract, which is expressed that this is the rate that we're paying you. But they say we're not paying you anymore from this date on. Isn't that a termination of the skilled nursing service contract? They still utilized her services. She never agreed to a lesser rate. But why didn't she stop providing the skilled nursing services and tell them, if you're not paying me, I'm not providing them? And that's an argument or a position that weakens our case. We recognize that. You're making an argument now that the written agreement had tied to it, the at-will agreement. It was not tied to the host-home agreement. Well, then. The question here in summary judgment is whether or not there's disputed facts sufficient to have the case go to a jury. And based on the record in this case, and as Judge Jordan pointed out, the factual Did anybody plead the statute of frauds in this case? That was never argued. In response to your theory? That was never argued in this case, Judge. Well, it may have never been argued because it had a hard time understanding which contract or whatever you were traveling on. Well, we would even argue that the statute of fraud would not apply because the contracts could be terminated within less than a year. So that's what they did. Exactly, but they didn't argue that. And so the statute of fraud wouldn't capture it and require it to be in writing. In that instance. Okay. So it's our position that the evidence in this case creates a factual basis for this case to be sent to a jury based on the two competing agreements and their argument that if the court reviews the record, the merger clause containing the On the verbal agreement, what would the instruction to the jury look like? My jury charge would be that No, no. You asked the jury to find what? That there was an agreement and that the agreement was for nursing service and that the rate was for $16 an hour. Yeah. And when was it be terminated? It could be terminated by either party, but they decided they did not want to pay her despite the fact the state was still allotting the amount of money for nursing service specifically for Ms. Johnson. Is your argument kind of like this is like a law school exam and the judge had two competing stories and she picked one but not gave you a chance on the other one? So the granting of a summary judgment was improper? That's precisely it, Judge. I mean, that's the point of summary. There's disputed facts in this case as to whether or not it was an express agreement, whether it be verbally or in writing, and whether that agreement was breached. And our position is that the merger clause and the host home agreement doesn't capture the nursing service. That's a totally separate agreement and the parties are different, and so you can't say that the parties to one agreement prevents the enforcement of another agreement that was verbally entered into by the parties. And I'll reserve the five minutes for the rest of my argument. Mr. Boyd. Good morning, Your Honors. May it please the Court, President Counsel. I'm with the firm of Hawkins, Parnell & Young here in Atlanta. I'm pleased to represent ResCare, Inc., the defendant in this case. I want to briefly explain the nature of ResCare's business. I know my time is limited, but they provide services to disabled individuals. It can be in multiple types of contexts. It could be in a person's home. It could be in a group home that they run. Or in this situation, which is akin to foster care, they can place a disabled person with a host home provider, which is what Ms. Johnson did from 2011. The subject matter of this appeal is very simple. This was a foster care? It's essentially foster care. They're adults, so it's not like. I understand, but is it in court order or is it just by agreement? It's by agreement. Okay. That's what it is. They provide the service. They find the personnel like Ms. Johnson, and then they place them in their home. After discovery in this case ended, the district court correctly decided two issues as a matter of law and granted summary judgment for ResCare. And the two issues were this, whether plaintiff had met her burden of proving that a written agreement, because that is what she argued below, upon which she based her claim, and this is this 2007 agreement. She was basing the claim initially on the unsigned agreement. Correct, Your Honor. According to the district court, it wasn't necessarily a written agreement. It was an express agreement. Well, the document is clear, and it's in the record. It's page 51 of the plaintiff's deposition, if I could read, Your Honor. She said, I had a nursing contract to be paid for the nursing service, $16 per hour. And I asked her, okay, and that's a written contract, correct? And she said, yes. And throughout this case in the district court, plaintiffs relied on the 2007 unsigned agreement, what they said was effective. Well, it's whatever consequence there is. There's no doubt that ResCare and Ms. Johnson had a contractual relationship through the time of the host agreement. We agree. What governed that relationship? As you pointed out, there was, but this wasn't relied on by the plaintiffs, but it had to be an oral agreement that was terminable at will. To do what? To provide freelance nursing services in the time period. At what rate? $16 an hour. In the time period between. Okay, so she's right, Ms. Johnson is right, that up to the time, at least that up to the time of the host agreement being entered into, the parties were traveling on an oral agreement to pay her $16 an hour for skilled nursing services. We agree with that, Your Honor. It was at will. I'm sorry, Your Honor. It was an agreement at will, as I understand it. That is correct. Which could be terminated by either side on notice. At any time, and that's exactly right. And so we think that that arrangement, that oral contract that we're talking about, terminated, it could have happened in two instances. One, in 2011 when she entered into these host home agreements, which contrary to what. But you paid her $16 an hour sometime after that. Mistakenly, yes, we did. We tried to recover that. I understand. She has that money and you said no more. That's right. And if you look at Plaintiff's complaint and her depositions, she says her claim period, the money that she's seeking, is money that where we, in July 15, 2014, we stopped paying her that extra amount that we were mistaken with paying her. And she admits that her claim is from that point forward. Indefinitely. I'm sorry, Your Honor. Indefinitely? Indefinitely. Right. She also admits. No, I thought it was to the time when Rest Care formally terminated. No, no. Her claim. When did Rest Care formally terminate the relationship with her? Long after this case was litigated. I know. Just give me the time. I think it was last year. So it's not indefinite. It's to that period of time because she can't. She actually quit. Whatever the circumstances. Right. She certainly couldn't recover for nursing services that she didn't provide after that point in time. That's right. So although it's a much longer period of time, it's not technically indefinite. It has an ending point. Right? The ending point is when she left. Well, Your Honor, I sort of respectfully disagree because when you're talking about an arrangement that is at will, it is indefinite at the inception until terminated. So obviously if something, you know, things could happen in the future that would terminate that arrangement. But when you're talking about an at will arrangement, it is an indefinite arrangement because you don't have a specific ending point. I believe that was the point the judge replied. My understanding is her theory was that it couldn't be terminated as long as she had somebody in her care residentially. That appears to be the argument now. We haven't ever heard that. That's not an argument below, but it is now. That's right, Your Honor. Okay. Yeah, that never was raised below. Let me tell you the one part of your case where I think you may have an issue. And it may not be fatal to you, but I think it's at least for me a concern. And that is the merger clause. The problem for me is a technical one. The merger clause says that this is the entire agreement and understanding, and I'm paraphrasing, between the parties and there are no other agreements, understandings, et cetera, et cetera, and no other compensation is going to flow, whatever, whatever, whatever. That merger agreement is in a contract between Mike St. Joel's and Rest Care, not between Rest Care and Ms. Johnson. So if you're looking at contract principles, she is technically not a party to that hosting agreement. And so that merger clause could not possibly apply to a non-party who never signed the agreement in an individual capacity. What's wrong with that understanding? Yeah. First of all, that argument was never raised below. Understood.  Secondly, that's. . . But you presented the argument about the merger clause below. So I want to test that argument and see whether it stands up. Certainly. That's my question to you. Your Honor, that argument is an alternative one based upon there's no other existing agreement. I know. That's why I said you may not lose. If the hourly rate was terminable, it will. It doesn't matter whether there was a merger agreement or not. That's right, Your Honor. But to address Judge Jordan's question, if you. . . First of all, the plaintiffs tried to argue that Rest Care of Georgia, which is the name on the host home agreements, and Rest Care, Inc. are. . . there's some ambiguity there. There's not. In her own briefings in this case, in her motion to amend, she refers to Rest Care of Georgia, I mean, Rest Care, Inc., DVA Rest Care of Georgia. There's no. . . That's not my concern. There's no question. On Mike Angel's host home, if you look at how those agreements are signed. . . There's no indication. . . That can't be because if she's signing in her individual capacity, she can't bind Mike's Angels. Mike's Angels is not listed as a company on the front of those documents either. And so the person providing the services was Kelly Johnson in her personal home. Then how in the world are you paying a non-signatory entity for those services? We don't believe that she's a non-signatory, Your Honor. No, Mike's Angels is a non-signatory. Right. She was paid. You're paying them. We paid Kelly Johnson. Then how could you enter into a contract with Mike's Angels? Again, Your Honor, we don't think we did. We think we entered into. . . I thought Medicare law required payment to be made to a separate entity and not to the individual providing skilled nursing services. Your Honor, I don't know the answer to that question, to be honest. I don't think that's the case. I can't say that with certainty.  Why wouldn't it be easier for her, for you, to tell her, okay, here's a hosting agreement. We're going to pay you $180 or $200, whatever, for these patients who need a lot of care. Sign this host agreement and we're done. Restcare and Kelly Johnson, we're done. Your Honor, they do that all the time. In this situation, people may choose to say, I want to run this through some sort of company or something like that for their own personal reasons, tax reasons, whatever. It really doesn't matter because she signed in her individual capacity. She was providing the care. Then where does Mike's Angels play into this whole thing? We don't think it does. It's just an entity that existed for no reason whatsoever. For purposes of this dispute, Your Honor. Who was the host agreement between? Restcare Inc. and Ms. Johnson. This case gets crazier every time I think about it more. If you look at the very first paragraph of the plaintiff's complaint, it says, Plaintiff Kelly Johnson is a resident of Georgia and a host home provider. There's an admission in judicio on the very first paragraph of the very first document filed in this case that she is the person who is the host home provider. We believe that's true. That helped jurisdiction argument too. It did on diversity. That's what I mean. She's an individual on a diversity case. That's right. She's an individual residing in Georgia. She said so in paragraph one. We're a foreign corporation. Your Honor, principally speaking though, going back to the main point, down in the district court, Ms. Johnson relied solely on a written contract, this PSA that we referred to in our briefs. That's a 2007 agreement. That's a 2007 agreement, Your Honor. And that agreement was never signed by my client. It dealt with behavioral support services, which Ms. Johnson admitted she was not qualified to do, was not expected to do, never did. Her clients didn't have behavioral support plans. And so the court below what was facing Judge Evans when she was looking at a motion for summary judgment was plaintiff's argument that that written contract required my client to pay her $16 an hour, apparently in perpetuity, for additional nursing services. And that's just not the case. She couldn't perform those services. She was not professionally qualified to perform those services. She never did. She never was expected to. The clients had nothing to do with the clients she had because they didn't have behavioral support plans. And so there was no subject matter upon which this contract could possibly operate. Again, Your Honor, I'll be the first to admit it probably was sloppy. I mean, somebody sent her this draft document saying, this is the type of thing that we're going to need to sign and that nobody ever followed up. But it doesn't make it a contract. There's no mutual assent. There's no signed version from my client. And why would they sign a document which obligated her to perform services she couldn't perform? It just doesn't make any sense. There's no consideration for this document because she can't perform those services, never did, never made a promise to, and never was expected to. So it's a formation case based upon the evidence presented to the district court below. There's no formation on this 2007 writing. I won't call it an agreement. The title of it is Professional Services Agreement. But there is no formation of that document. Plaintiffs did not rely on any kind of oral agreement in the district court. And, in fact, at the 9th hour or 11th hour, with discovery closing and summary judgment motions imminent, the plaintiff filed a motion to amend her complaint to add implied contract and quantum merit theories of recovery. It was at least seven or nine months after the amendment deadline under the court's scheduling order. We opposed it. Judge Evans looked at it and said they hadn't met the standard of diligence or good cause under Rule 16, which was the applicable rule for an out-of-time motion under a scheduling order. And it was clear, and we presented this in our brief, and I'll let the laborer point, that any information that the plaintiff had in order to assert such a claim, she had it two years ago. She had it when she filed her complaint. In the joint planning report, she admitted she was considering amending to add those claims, and then never did. And so the reason why this oral agreement piece never came up in the district court is because plaintiffs never asserted it. They did so untimely, and Judge Evans properly denied their motion to amend. And so, again, this really shouldn't be before this court. It's one of the many things that shouldn't be before this court. Plaintiff tried to supplement the record with additional deposition testimony that was never presented to Judge Evans. She denied that motion. They relied on it in their briefs. There's a lot of that going on here. And as this court knows and has held many times, we cited the Hurley v. Moore case, arguments not raised in the district court can't be raised here. Let me very briefly address the issue of the merger clauses. As I mentioned, Judge Jordan. Well, it really is irrelevant on the facts, isn't it? We don't need to get there. I completely agree, Judge. I mean, it's an entirely different service. Well, on the host side, actually. If the written agreement fails, whether there was, let's assume the written agreement fails, there still was a day-to-day offer of services and payment. That's right, Your Honor. At will. For a period of time. Yeah. Regardless of the merger. Correct. We would say that it ended in 2011, but even if you take the period where we were mistaken. Well, not only that, whether it was by accident or not, the payment of the hourly rate after the written agreement is signed is in effect evidence that it wasn't merged. Do you follow me? Your Honor, yes, but I don't completely agree. If I were you, I would get off of that point. Well, Your Honor. That dog doesn't hunt, as he used to say. In any event, however, it is clear and undisputed that any such arrangement ended on July 15, 2014 or by July 15, 2014, which is the first time Rest Care did not double pay in that way. That's when she was told no more. No more. And she admits that that is the case in her deposition. The evidence is completely undisputed on that point. What was that date again? July 15, 2014. And her claim, however, starts on that date. We understand that. Okay. So there can be no claim there. We still do think that the merger. The argument is it wasn't terminable, that's all. That's a necessary consequence of making the claim, that it wasn't terminable. In effect, Your Honor. No, as a matter of law. Thank you, Your Honor, unless you have further questions. I think we understand your position. Mr. Burke. Counsel argued that the issue of the merger clause was never brought up in the trial court. It doesn't matter anyway. Well, we think it does, Judge, and here's why. No, no, no. What I'm saying is it's inoperative. I'm throwing you a softball. I got you. Forget the merger clause. But it was brought up. I understand that. Forget it. All right. Their position is. Your argument is, in the first place, by paying the hourly rate after the agreement was signed, they're in effect saying it wasn't part of the merger. My argument. Your argument is at Will's relationship, they told her we're not paying you anymore, but she's entitled to future money. That's correct. Okay. That's correct. With respect to counsel's comment that the . . . and I've got to go back to the merger clause again because the record . . . this is why we're here because the district judge inferred and viewed facts in favor of the defendants. The district judge used the merger clause because you were traveling on a written agreement. Expressed agreement initially. No, no. A written agreement. We did argue that, Judge, that there was a written agreement. But Georgia law just requires us to state. We don't have to, in the complaint, allege other than there was a contract, there was agreement between the parties, there was breach, and there was damage, whether it's verbal or whether it's written, which the complaint contains. When I read what you submitted in support of opposition to the motion of assembly judgment, which I haven't, what will I see? You will see as it relates to . . . there's a question. What will I see about the 2007 agreement? That there is a question of the parties and they've admitted that there was a contract for nursing service that she provided. In accordance with the written document. We do argue that there was a written agreement because they submitted it. Their only position with respect to the written document was we don't have a copy. We never signed that. But that agreement . . . Even that's a factual issue. But that agreement was not forever, right? You said that at the beginning. No, it was not. So it turned into an oral agreement. Correct. You agreed with that and your opponent agrees with that. Correct. If there's an oral agreement to pay her for skilled nursing services, right, let's assume . . . I'm assuming you are correct that they had agreed to keep paying her separately for skilled nursing services, even after the host agreement was entered into, okay? I agree with you. Why doesn't that agreement to pay her separately end when they tell her in July of 2014, we're not paying you separately anymore? Why doesn't it end there? Because you need two to have a contract, and if one party of the contract says, we're not doing it anymore, why isn't that the end of it, even under your version of the facts? I would agree that under . . . Without these set of facts in this case, that would be the end of it. But they are . . . What are the facts in this case? It's not the facts. That's not what they argued. They argued that the reason why we don't have to pay you $16 an hour anymore is because we created this host agreement that you're not a party to. No, forget that. I'm agreeing with you, and I'm rejecting their legal theory. So I'm agreeing with you that at the time the host agreement was entered into, RestCare had still agreed to pay Ms. Johnson $16 an hour separately for skilled nursing services. So when they signed that host agreement in 2011 or 2012, she's getting paid for the host services, and she's getting paid $16 an hour. I will further agree with you that it was not a mistake on their part to be doing that, that they did it intentionally. And they said, we have two different obligations, nursing services, host services. But in 2014, for whatever reason, they decide no more. We're not doing it anymore. We're just paying you the host amount and nothing else. Why doesn't that end the skilled nursing services agreement if one party doesn't want to perform anymore? It does. It ends the skilled nursing. That's the end of your case, then, in my view. Right, up to that point. She got paid up to that point. Well, they didn't pay her up to that. They didn't pay her. They paid her until they said no more. Until what day did she get paid? They terminated the skilled nursing by its own mission in 2017. I'm not asking you that question. Until what day did they pay her separately for skilled nursing services? I believe it was 2014. July of 2014. Correct. Then they said, and I'm agreeing with you, I'll reject their reason for stopping. They said it was a mistake. I'll agree with you that it wasn't a mistake, that they were paying her intentionally, separately. But in 2014, they changed their mind, and for whatever reason, they say no more. Isn't that the end of your case? Because one party to the contract says, we don't want to perform anymore. It's over. That didn't end the case. Why? If she provided them without an agreement on the other side to pay her, where's the contract? That's why summary judgment was inappropriate in this case. No, because you saw, on a contract basis, you've got serious problems, in my opinion. And I think that's why you tried to add a quantum merit count, but the district court didn't allow you to add it. Correct. I think I understand. Didn't Roberts tell her in June of 2014 that this is the end? He said it was a mistake, that we made a mistake. And said we're not going to do it anymore. We shouldn't have been. We're not going to do it anymore. I think we have your case. All right. Thank you, Judge. We'll move to the estate.